IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANDREW J. SMITH                                                    PLAINTIFF

v.                                          Civil Action No. 3:14-cv-404-TSL-JCG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                   DEFENDANT

## REPORT AND RECOMMENDATIONS

This matter is before the Court upon Plaintiff Andrew J. Smith's Complaint
[1] pursuant to 42 U.S.C. § 405(g), seeking review of an administrative decision by
Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.  The
Commissioner denied Smith's claim for a period of disability and disability
insurance benefits under Title II of the Social Security Act.  Smith has filed a Brief
[11] in support of his Complaint.  The Commissioner has filed a Motion [12] for an
Order Affirming the Decision of the Commissioner.  Smith has responded to the
Commissioner's Motion.  Resp. [14].  The undersigned submits this Report and
Recommendations to the United States District Judge and recommends that the
Commissioner's Motion [12] be granted.  The Commissioner's decision is supported
by substantial evidence and in accord with correct legal standards.

## I. BACKGROUND

### A. Administrative Proceedings

On September 26, 2011, Smith filed an application with the Social Security
Administration seeking a period of disability and disability insurance benefits.
Smith alleged an onset of disability beginning September 1, 2010, but later

amended the alleged onset of disability date to August 30, 2011.  R. [10] 14.  August 30, 2011, is the last day that Smith worked.  Smith was terminated on that date from his position as a heavy equipment mechanic because of excessive absenteeism. *Id.* at 402.  Smith had worked at this job for about two and a half months, during which he missed eight full work days and two half days.  *Id.* at 153.  Smith's application for disability benefits was denied initially on August 8, 2012, and upon reconsideration on October 22, 2012.  Smith timely filed a request for hearing before an Administrative Law Judge ("ALJ").

A hearing was conducted on May 7, 2013, in Jackson, Mississippi, before ALJ, Willie L. Rose.  Smith appeared in person and was represented by an attorney. Through earnings reports, the ALJ determined that Smith acquired sufficient quarters of coverage to remain insured through December 31, 2016.  *Id.* at 14, 16. Smith and a vocational expert ("VE"), Jerry Rouser, testified.  The ALJ issued a decision on June 13, 2013, concluding that Smith was not disabled within the meaning of the Social Security Act.  *Id.* at 14-23.

On March 18, 2014, the Appeals Council denied Smith's request for review of the ALJ's decision, thereby rendering the ALJ's decision as the final decision of the Commissioner.  Having exhausted his administrative remedies, Smith commenced the present action by Complaint filed May 19, 2014.

B.    Statement of Facts

Smith was born on September 1, 1982, and was 28 years old on August 30, 2011, the alleged disability onset date.  *Id.* at 22.  Smith obtained a GED and

completed an associate's degree in emergency medical technology. *Id.* at 678. Smith has past relevant work experience as an active duty military rifleman and police officer, heavy equipment operator, heavy equipment mechanic, grocery store stocker, and emergency medical technician ("EMT"). *Id.* at 21, 699-700.

Smith was deployed twice to Iraq as a member of the Army National Guard. *Id.* at 686-692. VA records indicate that Smith's first deployment was for one year, in 2007 and 2008, and his second deployment was for thirteen months in 2009 and 2010. *Id.* at 344. Smith "came off active duty orders as of 08/2010. He returned to the United States from his second deployment in 07/2010." *Id.* "Prior to his first deployment to Iraq, he did not have a regular job, but did some grass cutting." *Id.* at 350. Between tours, Smith worked "for about eight months" stocking shelves at a grocery store and then was activated for his second deployment to Iraq. *Id.* at 346. Smith told staff at the VA that he was "medically discharged [in 2013] due to his back." *Id.* at 340, 429. Smith sustained a compression fracture in his lumbar spine while in Iraq. Smith has not had back surgery but has had injections. Memo [10] 145. Smith desired to be deployed for a third time. He told VA staff on August 31, 2011, that he felt "mentally up to" a third deployment but "physically he is not sure because of his back." R. [10] 483.

On May 4, 2012, the Department of Veteran's Affairs ("VA") assigned Smith a 100% service-connected disability rating due to post traumatic stress disorder, effective at 100% from April 28, 2012. *Id.* at 144, 550-552, 703. The VA decision

provides that Smith was "assigned a 100 percent evaluation for your PTSD based on total occupational and social impairment, difficulty in adapting to stressful circumstances, suicidal ideation, and unprovoked irritability with periods of violence." *Id.* at 550.  Smith was discharged from the military on March 3, 2013, with a rank of E5 sergeant.  *Id.* at 691.  At the time of the ALJ hearing, Smith was drawing $2,816.00 per month in VA disability benefits.  *Id.* at 680-81.

The ALJ evaluated Smith's Social Security claim using the five-step sequential process.  At step one, the ALJ found that Smith had not engaged in substantial gainful activity since August 30, 2011.  At step two, the ALJ found that Smith had the following severe impairments: healed compression fracture of the lumbar spine and post traumatic stress disorder.  *Id.* at 16.  At step three, the ALJ determined that these impairments, considered singly or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.* at 17-19.

At step four, the ALJ assessed Smith's residual functional capacity ("RFC") and found

> that the claimant has the residual functional capacity to perform light worked defined in 20 CFR 404.1567(b) as an ability to lift 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk and sit for six hours in an eight-hour day and occasionally stoop, kneel, crouch, crawl, climb and balance. He cannot work at a job requiring intense concentration, focus, and attention throughout the work-day. He cannot work at a job requiring him to meet rigid production quota or deadlines and can only occasionally work with the general public. He cannot work at jobs requiring frequent interacting with supervisors

and co-workers.

*Id.* at 19.

The ALJ determined that Smith was unable to perform his past relevant work as a rifleman, police officer, heavy equipment operator, heavy equipment mechanic, grocery store stocker, and EMT. *Id.* at 21, 700-701. The ALJ concluded at step five, however, that Smith was capable of making an adjustment to other work. Relying on the VE's testimony, the ALJ found that, considering Smith's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Smith can perform. Representative jobs include

> photocopy machine operator DOT # 207.685-014 light, unskilled work with 38,000 jobs in the national economy and 200 in Mississippi; laundry presser DOT # 363.682-018 light unskilled work with 159,000 jobs in the national economy and 2,000 in Mississippi; and vending machine attendant DOT # 219.464-014 light unskilled work with 18,000 jobs in the national economy and 300 in Mississippi.

*Id.* at 22. The ALJ concluded that Smith has not been under a disability, as defined in sections 216(i) and 223(d) of the Social Security Act, from August 30, 2011, through the date of the ALJ's decision, June 13, 2013.

## II. ANALYSIS

A.    Administrative Review

A review of the Commissioner's denial of benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the Commissioner applied the correct legal standards. *Perez*

*v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence must be more

than a mere scintilla, but it need not be a preponderance.  *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995).

   The Court's role is to scrutinize the entire record to ascertain whether

substantial evidence supports the Commissioner's findings.  *Hollis v. Bowen,* 837

F.2d 1378, 1383 (5th Cir. 1988).   The Court may not reweigh the evidence or

substitute its judgment for that of the Commissioner.  *Id.*  This is so, even if the

Court determines that the evidence could allow for a different finding.  *Strickland v.

Harris,* 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are to be

resolved by the Commissioner, *Laffoon v. Califano,* 558 F.2d 253, 254 (5th Cir.

1977), and only a "conspicuous absence of credible choices" or "no contrary medical

evidence" will produce a finding of no substantial evidence, *Hames v. Heckler,* 707

F.2d 162, 164 (5th Cir. 1983)(citations omitted).

   As summarized by the United States Court of Appeals for the Fifth Circuit,

> [t]he claimant has the burden of proving she has a medically
> determinable physical or mental impairment lasting at least
> twelve months that prevents her from engaging in
> substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A).
> Substantial gainful activity is defined as work activity
> involving significant physical or mental abilities for pay or
> profit.  20 C.F.R. § 404.1572(a) and (b).  The ALJ uses a
> five-step sequential process to evaluate claims of disability
> and decides whether: (1) the claimant is not working in
> substantial gainful activity; (2) the claimant has a severe
> impairment; (3) the claimant's impairment meets or equals
> a listed impairment in Appendix 1 of the Regulations; (4)
> the impairment prevents the claimant from doing past
> relevant work; and (5) the impairment prevents the

claimant from doing any other work. 20 C.F.R. § 404.1520.

> The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that she is no longer capable of performing her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

*Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000).

B.     Alleged Assignments of Error

1.     The VA's 100% Disability Rating

Smith maintains that the ALJ and Appeals Council failed to give proper weight to Smith's 100% VA disability rating. This alleged assignment of error concerns Smith's mental impairment only, as the VA's disability rating was based upon Smith's PTSD only. Smith maintains that the VA rating should have been given "great weight." Brief [11] 9. The Commissioner asserts that the ALJ gave valid reasons for giving the VA disability rating "little weight." Mot. [13] 7.

"A [VA] rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the [ALJ]." *Chambliss v. Massani,* 269 F.3d 520, 522 (5th Cir. 2001)(citing *Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir. 1981)). "The *Chambliss* court noted that *Rodriguez* and its progeny referred to a VA disability determination as

being entitled to 'great weight,' but the relative weight to be given to this type of evidence will vary depending on the factual circumstances of each case. *Barraza v. Barnhart,* 61 F. App'x 917, *1 (5th Cir. 2003). "ALJs need not give great weight to a VA disability determination if they adequately explain the valid reasons for not doing so." *Id.*

The ALJ reviewed the VA rating decision and the records relied on by the VA in reaching the rating decision. R. [10] 17-21. This is not a case where the VA rating and the evidence underlying it were absent from the administrative record before the ALJ. *Albo v. Colvin,* No. 2:12cv66, 2013 WL 5526584, *7 (N.D. Tex. Sept. 30, 2013). Here, the ALJ expressly refers to evidence in the VA records throughout his decision. The ALJ's decision first generally summarizes Smith's VA records concerning PTSD:

> The claimant has a history of treatment at the Veterans Administration Medical Center for post traumatic stress disorder. He has reported interpersonal conflicts as well as agitation and increased stress. In December 2011, the claimant explained that he stopped taking his anti-depressant medication because it was causing him to obsess about death. His medication was changed with no side effects, though he reported frequent, war-related nightmares in February 2012. By May 2012, the claimant reported that he was doing better dealing with his life and that his nightmares had decreased. A mental status exam at that time showed that he had a cautious mood and restricted effect with frequent crying. He denied hallucinations, though he endorsed paranoia. His thought processes were lineal and logical, and he showed no cognitive defects. In September 2012, the claimant explained that his psychological symptoms had increased and that he felt overwhelmed by psychosocial stressors (Exhibit 8F). In October 2012, the claimant told staff at the

-8-

> Veterans Administration Medical Center that his post
> traumatic stress disorder was causing full blown panic
> attacks, and he no longer wanted to see one of the Veterans
> administration physicians due to his Pakistani background.
> In February 2013, the claimant got into an altercation with
> a fellow veteran and became so angry he destroyed a
> suggestion box hanging on the wall of the office (Exhibit
> 13F).

*Id.* at 17.[1]

The ALJ compared the VA records with the Comprehensive Mental Status

Examination completed by Joseph R. Dunn, Ph.D., a licensed psychologist who

personally examined Smith at the request of the Office of Disability Determination

Services ("DDS"). *Id.* at 18, 180-82. The ALJ also reviewed a psychiatric technique

assessment and mental residual functional capacity assessment, completed by Dr.

Powers, a DDS non-examining psychologist. *Id.* at 183-200. The ALJ found that

Smith's restrictions were mild in activities of daily living; moderate with regard to

concentration, persistence, or pace; and moderate in social functioning. 20 C.F.R. §§

404.1520a(c)(3), (e)(2). The ALJ found no evidence that Smith experiences periods

of decompensation.

a. <u>Activities of Daily Living</u>: When the ALJ asked Smith if he could

"pretty much independently take care of your personal things?," Smith responded,

"Yes, sir." *Id.* at 685. Smith lives alone in a house, bathes himself, grooms himself,

dresses himself, prepares his own meals, performs his own household chores, has a

---

[1]Smith received outpatient mental health treatment at the VA and has not
been treated in a psychiatric unit. R. [10] 180.

driver's license, drives locally, watches television, uses the telephone, walks his dog regularly, does some light stretching and walking for exercise, hunts, goes to the grocery store, pays his bills, and manages his own finances.  *Id.* at 180-181, 681-82, 684-685.

       b.  <u>Concentration, Persistence, or Pace</u>: As to concentration, persistence, or pace, the ALJ's decision provides that "[t]he claimant's objective medical evidence of record shows few complaints in this regard."  *Id.* at 20.  Smith's "thought processes were lineal and logical and he showed no cognitive defects."  *Id.* at 17, 351.  Smith does not hallucinate, have delusions, or have memory problems. *Id.* at 17-18.  Dr. Dunn found Smith to show symptoms of restlessness.  *Id.* at 18. Dr. Powers opined that Smith has moderate difficulties in concentration, persistence, or pace.  *Id.*

     The ALJ considered Smith's testimony that "he missed work at his prior job due to paranoia and being easily distracted. [Smith] testified that he has problems with concentration as well."  *Id.*  The ALJ found inconsistency in Smith's statements.  Smith "testified that he last worked in August 2011 as a heavy equipment mechanic.  However, he explained that he was not able to properly work before that due to his inability to maintain focus and frequent paranoia." *Id.* at 19, 678.  The ALJ noted that this testimony contradicted Smith's statement to VA staff on August 31, 2011, "that he lost his job at a heavy equipment company but got another one only to be fired because he missed work to fill out military paperwork."

*Id.* at 20, 482.

Having considered the medical evidence and after judging Smith's credibility, the ALJ included limitations in the RFC to account for Smith's moderate difficulties in maintaining concentration, persistence, or pace. The RFC provides that Smith "cannot work at a job requiring intense concentration, focus, and attention throughout the work-day. He cannot work at a job requiring him to meet rigid production quota or deadlines . . . ." *Id.* at 19.

c. <u>Social Functioning</u>: The VA's 100% disability rating provides that Smith experiences "total occupational and social impairment." *Id.* at 550. The VA rating was based upon an April 28, 2012, Compensation and Pension Examination ("C&P exam"), which was conducted by the VA for the purpose of determining Smith's military disability benefits. Dr. Dunn, who completed a consultative exam at the request of DDS for purposes of this Social Security claim, found that "[Smith] appears to be withdrawn and avoidant socially and experience agitation which would interfere with his interacting effectively with others. He would appear to be poor at adapting to work-related stress." *Id.* at 182. The ALJ considered the VA rating, Smith's VA records, Dr. Dunn's findings, and Dr. Powers' opinion that Smith has moderate difficulties in social functioning.

The ALJ also considered that "medication and treatment seems to stabilize [Smith's] mental help [sic] symptoms, though he has reported some interpersonal

difficulties." *Id.* at 20.[2]  The ALJ found Smith's statements regarding social

functioning inconsistent.  *Id.*  The ALJ deemed notable that, while Smith alleges

that he cannot work because he does not do well around others, on May 1, 2012 –

three days after the C&P exam – Smith told staff at the VA that he hoped to go to

school on the GI bill.  *Id.* at 357.[3]  The ALJ concluded that Smith's stated desire to

go to college directly contradicted some of Smith's "allegations that he does not do

well around others, as a college setting would necessarily require him to be around

other students and teachers."  *Id.* at 20.

Having weighed the medical evidence and Smith's credibility, the ALJ

incorporated limitations into the RFC to account for Smith's moderate limitations in

social functioning.  The RFC provides that Smith "can only occasionally work with

the general public.  He cannot work at jobs requiring frequent interacting with

supervisors and coworkers."  *Id.* at 19.  There is substantial evidence supporting the

ALJ's decision regarding Smith's social impairment.

      d.  <u>Reasons for Rejecting the VA Rating</u>: The C&P examiner's

conclusion that Smith experiences "[t]otal occupational and social impairment" was

---

[2]Smith testified that his medication "control[s] my actions with my temper a
little bit better in my opinion."  R. [10] 694.

[3]The VA record that the ALJ's decision references states: "Pt is waiting for his
disability.  He would like to go to school and did enquire [sic] about the GI bill.  He
spends his day riding around. Finds no purpose, no goal. For the first time, he did
agree to come to groups for anger management.  Vet center brochure given for
relationship issues but looked at a certain name and did not want to go there at all.
Pt encouraged not to over generalize his experience."  R. [10] 357.

adopted in the VA rating decision issued May 4, 2012. *Id.* at 308, 550. "[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 61 FR 34471-01. Opinions from medical sources that a person is "disabled" or "unable to work" "are not medical opinions . . . but are, instead opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d).

In his step-five analysis, the ALJ relied on specific testimony from a VE who opined that there are available jobs in the national economy for a person closely similar to Smith in age, education, work history, and RFC. The VE's specialized knowledge of work requirements was not challenged by Smith. The VA records do not indicate that the VA's opinion of "total occupational and social impairment" was based upon similarly competent vocational evidence. To the extent the rating was based on the findings of the C&P examiner, statements from medical professionals regarding vocational issues are not authoritative. *Loya v. Heckler,* a  707 F.2d 211, 214 (5th Cir. 1983)(citing 20 C.F.R. § 404.1527 (1982)). In *Loya,* the Fifth Circuit held that while the ALJ was required to give substantial weight to two treating physicians' medical findings regarding a claimant's physical limitations, the ALJ was not required to give substantial weight to the physicians' "opinions about the actual availability of jobs for a person of limited physical ability and education." *Id.*

The circumstances here are akin to those in *Barraza.* In *Barraza*, the Fifth

Circuit affirmed in a case where "[t]he ALJ expressly considered but declined to adopt the VA's rating of total disability because it was not based entirely upon medical evidence and because he was not convinced that the VA's vocational assessment of 'unemployability' was determined using the criteria set forth in regulations controlling disability benefits determinations." *Barraza,* 61 F. App'x at *1. Here, the ALJ independently reviewed all of the evidence relied on by the VA and determined that this evidence only "somewhat supported" the VA's rating decision. R. [10] 21. The ALJ had before him, not only the VA records, but also the opinions of Dr. Dunn, Dr. Powers, and the VE. The ALJ judged Smith's credibility and found Smith's daily activities inconsistent with a finding of total disability. Reading the ALJ's decision as a whole, the undersigned is of the opinion that the ALJ's explanation for affording the VA rating "little weight" is sufficient.

The ALJ properly performed his function as the trier of fact and in accord with Social Security regulations governing the evaluation of medical opinions. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ is entitled to determine the credibility of the medical experts and lay witnesses and weigh their opinions accordingly. *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994). The evidence cited by the ALJ in support of his finding that Smith was capable of doing some work despite his PTSD easily exceeds "more than a mere scintilla" of evidence. The ALJ's findings of fact which are supported by substantial evidence are conclusive. *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

-14-

2.    Smith's Physical Limitations

The ALJ determined that Smith had a severe impairment of a "healed compression fracture of the lumbar spine . . . ."  R. [10] 16.  The ALJ found no evidence in the record of "the compromise of a nerve root or the spinal cord."  *Id.*  The ALJ's decision generally summarizes the evidence in Smith's VA records concerning Smith's back and takes into account the consultative exam report of Parvel Goel, M.D.  *Id.* at 16-17, 20, 177-179.  Though the medical evidence indicated significant spinal impairment for a person of Smith's age, the ALJ found that Smith's reported daily activities contradicted a finding of complete physical disability.  The ALJ noted that Smith performs his own household chores, hunts, and regularly walks his dog.  The ALJ's decision notes that on May 1, 2012, – three days after the C&P exam –  Smith told VA staff that he spent his days riding around.  *Id.* at 357.  The ALJ found that "[t]his directly contradicts his sitting limitations . . . ."  *Id.* at 20.  There is more than a scintilla of evidence in the record supporting the ALJ's conclusion that Smith has some physical exertional limitations but not to a disabling degree.  *Ripley,* 67 F.3d at 555.

3.    The Dictionary of Occupational Titles

Smith asserts that the ALJ violated Social Security Ruling 00-4p, which provides that occupational evidence provided by a VE "generally should be consistent with the occupational information supplied by the [Dictionary of Occupational Titles ("DOT")], and that, in the face of an "apparent, unresolved conflict," the ALJ must elicit a reasonable explanation before relying on the VE's

-15-

testimony.  SSR 004-p, 2000 WL 1898704, *2 (S.S.A. Dec. 4, 2000).  Smith asserts

that the ALJ erred by failing to address a conflict between the VE's testimony and

the DOT.

DOT classifies occupations based upon General Education Development in

mathematics, literacy, and reasoning.  DOT Appendix C, Section III, 1991 WL

688702.  The VE testified that a person closely similar to Smith's age, education,

work history, and RFC, could perform the jobs of photocopy machine operator, DOT

# 207.685-014; laundry presser, DOT # 363.682-018; and vending machine

attendant, DOT # 219.464-014.  Smith maintains that the jobs cited by the VE

conflict with the DOT, and that because the VE's testimony conflicted with the

DOT, the ALJ was required to explain why he chose the VE's opinion over the DOT.

Assuming that a conflict existed between the VE's testimony and the DOT,

this conflict was not "apparent" because Smith failed to raise the issue before the

ALJ.  *Abel v. Astrue*, No. 3:09cv327-TSL-FKB, 2011 WL 1099890, *7 (S.D. Miss.

Mar. 2, 2011), report and recommendations adopted, 2011 WL 1044155 (S.D. Miss.

Mar. 22, 2011).  The ALJ presented the VE with hypotheticals that reasonably

incorporated the restrictions that the ALJ recognized.  The VE opined that an

individual closely similar to Smith with the restrictions the ALJ recognized could

perform the jobs of photocopy machine operator, laundry presser, and vending

machine attendant.  The ALJ asked the VE whether his testimony was consistent

with the DOT, and the VE responded that it was consistent.  Smith's counsel cross-

examined the VE, but not regarding the DOT or alleged inconsistencies with the

DOT.

Because there was no "obvious, direct conflict" between the VE's testimony and the DOT, the ALJ was not required to explore the matter further than he did. *Abel,* 2011 WL 1099890 at *7. "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel,* 230 F.3d 131, 146-47 (5th Cir. 2000).

### III.  RECOMMENDATIONS

For the reasons stated, the undersigned is of the opinion that the Commissioner's decision is supported by substantial evidence and in accord with correct legal standards.  It is recommended that the Commissioner's [12] Motion for an Order Affirming the Decision of the Commissioner be granted.

### IV.  NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge.  Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.  The District Judge need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object.  *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 1st day of July, 2015.

s/ John C. Gargiulo

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE